IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) No. 4:19CR 193 AGF | |
| | ) | |
| JEFFREY DALE EISENBATH | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

In fashioning a sentencing, a Judge considers what can be done to punish, discourage criminal behavior in the future, what can be achieved by rehabilitation while in prison, and what can be achieved by counseling and treatment after years in prison.  When a defendant faces a lengthy mandatory sentence, the question is whether an even longer sentence is necessary to prevent future criminal behavior.

An experienced Judge knows how to look among the people who have been to prison before and failed and find those who can still succeed: the men and women who have real potential to change.  People for whom probation officers often make valiant efforts and guide them to a measure of success after incarceration.  A Judge understands that it is sometimes difficult to determine

1

whether the person before him or her can successfully navigate the complex journey of remaining free after a substantial prison sentence. Jeffrey Eisenbath is a person who after years in prison may succeed in years to come.

## How It Began

"Looking at websites that popped up, just clicking around, looking at thumbnails," that is how it began, Jeffrey says.   He remembers looking at images of adult oriented pornography when he was in his twenties surfing the web. One day he saw "softcore" and then "hardcore pornography" and then, intermixed, he says, were images of images of child pornography. Like most people, Jeffrey had never seen images of child pornography. He says he didn't initially seek those images, but for reasons he cannot explain, he searched for the material again even though he was repulsed by them. He says he came back to the to link but the website gone. He would go for "months and months without looking," but then he would search again, leading to a spiral of shame and regret. And like many others in the recent explosion of child pornography cases, he became addicted.

He grappled alone with the shame and fear.  He knew that the knowledge of his actions would devastate his mother Debra, his father, Paul and his sister Cynthia along with friends and acquaintances. So, Jeffrey

sought help from the from a trusted and important part of his life, the Catholic church.

Jeffrey is part of a close-knit family with a strong religious background. He recalls that growing up in Troy, Missouri, "We ate dinner together, went on family vacations. We went to church every Sunday." Jeffrey's family was active in their Catholic church and Jeffrey attended Sacred Heart Catholic Grade school in Troy. Throughout high school Jeffrey was involved in church organizations.

**Jeffrey Eisenbath Sought Help For His Internet Pornography Addiction**

It was through the church that he sought assistance in overcoming his pornography addiction.  He signed up for a religious retreat at the White House Jesuit Retreat in St. Louis.  "It was group retreat from Thursday to Sunday." What made it significant, Jeffrey says, was that "it was nature oriented. We had time for talking and reflection." During the retreat, participants attend Mass, group discussions and spent time walking the grounds overlooking the Mississippi.  He confided in a priest during the retreat about his struggle with adult and child pornography.  Jeffrey says the priest told him " 'Sounds to me like you have an addiction.' But I wasn't sure, but it made me look at it. How does someone fix an addiction in 20 to 30

minutes." The psychology of technology and an increase in the availability of these images may explain why individual with no significant criminal history may end up engulfed in the online world of child pornography.

Jeffrey was determined to continue seek help but says he didn't know where to turn. "When I got back, I looked into therapy, but didn't really have the money and it's not the kind of thing you talk about with anybody."  He heard about and installed what he describes as a "faith based" software to monitor his computer. "It monitors what search goes into your computer." The software, Covenant Eyes, is described on its web site as an accountability and filtering program to aid users in breaking pornography addiction. Jeffrey says the program was Christian oriented and involved a sponsor, another person could shut down any searches that weren't authorized. "The other party could block the websites."

Jeffrey also read information about addiction in general.  "My triggers were when I was extra angry, lonely, tired. A movie with an unexpected sex scene. It was constant mental evaluation. Is this something that will make me fall back into being a person I don't want to be." The software, the sponsor and his attention to triggers worked at times.  But Jeffrey says he was ashamed to bring up his relapse and lost touch with the sponsor.

4

Jeffrey is described as quiet and somewhat introverted by his family and friends. He says he had difficulty focusing during school.  "If I like it I learned.  I didn't like reading." He was bullied at times and played by himself. He "acted as the class clown' to compensate. At Troy-Buchanan High School in Troy. He says "I didn't have too much of a social life really. I had one group of acquaintances in high school. I never really hung out." Jeffrey describes himself as having one only one or two close friendships. "When I was bullied high school, I honestly I just thought that was normal. They would make jokes, verbal stuff." Jeffrey says he kept quiet and to himself for the most part and graduated in 2007.

Jeffrey's father worked in the natural gas field but was laid off after 20 years. His mother worked in  accounting and payroll for businesses. Jeffrey always tried to help financially. He had his first job in the tenth grade, working as a dishwasher in a restaurant. He also found work  during his teenage years at an equestrian center cleaning stalls and mowing the grass. After high school he attended St. Charles Community College in 2007 and 2008, taking twelve classes and earning 28 credits. He took additional classes and trained as an apprentice electrician.

## 18 U.S.C. § 3553(a) Sentencing Factors Supporting A Sentence of 15 Years

While one must consider a sexual offender's risk for reoffending in fashioning a sentence, it important to consider a defendant's strengths as well.  Individuals who have what are described as "protective factors" are more like to refrain from reoffending. [1] The protective factors for an individual include family ties and support which provide stability.  Remorse, motivation to change and a hopeful, positive attitude to desist from the prior conduct has been shown to be a factor in desistance.  A person free from substance abuse issues and with limited criminal history is more likely to succeed.  A history of employment is another protective factor.  "Constructive social and professional support network.  Ability to form constructive relationships with other adults, both socially and with persons in profession support and authority roles. Individuals with protective factors in this domain will have a law-abiding social network."[2]  Jeffrey has many of these protective factors in his life.

---

[1]
https://pureadmin.qub.ac.uk/ws/files/159713717/Protective_factors_supporting_desistance_from_sexual_offe nding._De_Vries_Robb_et_al._submitted.pdf
[2] Id.

Jeffrey Eisenbath admitted his involvement immediately upon his arrest and cooperated with law enforcement.  He did not market or distribute any images to others. He regrets the anguish and pain that he caused the victims. He feels remorse for the shame and heartache he brought to his own family.  His family remains supportive despite his actions. His mother, father and sister have kept in close contact with him throughout his incarceration. His family paid for Jeffrey to receive an eye examination and prescription eyeglasses while in custody.  He regularly writes to and receives letters from friends that he met during his Bible study classes before his incarceration. Before COVID-19 restrictions, he received visits from his family and friends. He has been open with them about the nature of his charges, his actions, and his addiction. He is grateful for their support and encouragement. Jeffrey has a support system which gives him stability as noted in the letters on his behalf.

He sought help for his pornography addiction before he was arrested and is amenable to treatment. Jeffrey says he was deeply disturbed by his behavior and tried to take steps to manage his risk towards individuals with whom he had contact in the community. He struggled for years to stop but did not have  the tools to overcome this behavior. He says that his strong

faith contributed to his desire to change and he looks forward to undergoing sex offender treatment.

Jeffrey also has the protective factor of past employment. He enrolled in trade classes with the IBEW local electrician union.  He received several certifications and was working toward others including fiber optics.  He worked part time as an apprentice electrician for one year until he was laid off.

### Mr. Eisenbath Is In Primary State Custody Currently Serving A Four Year Sentence For Related Conduct For Which He Will Not Receive BOP Credit

The basic method to determine the interaction of state sentences and federal sentences is to figure out which authority (state or federal) is the primary custodian and then follow statute 18 U.S.C. § 3585. In this case, the state is the primary custodian.  Jeffrey Eisenbath was arrested on January 22nd, 2018 for a related Missouri state offense.  PSR at 74.  He remains in state custody after being sentenced to four years in the Missouri Department of corrections on November 9, 2018. According to the court docket for the instant offense, a Writ of Habeas Corpus was signed on March 7th, 2019 and he was "arrested" by the United States Marshal on March 18, 2019.  While the PSR states that he has been in federal custody since March 15, 2019 he

has done so via the Writ of Habeas corpus and therefore remained primary

state custody during the pendency of the instant federal cause. The PSR

states that he was "paroled" on September 21, 2020, but he will not complete

his Missouri sentence until January 21, 2022.  PSR at 74.  He has yet to

fulfill his Missouri state sentence and must be returned to the state.

> The PSR finds that:

> "As the defendant is serving a term of imprisonment for conduct that is
> related to the instant offense, according to USSG § 5G1.3(b) and
> Application Note 2, the Sentence in the instant offense should be adjusted
> for any period of imprisonment already served on the undischarged term
> of imprisonment if the court determines such period will not be credited
> towards service of his federal sentence and the sentence in the instant
> offense shall be imposed to run concurrently to the remainder of this
> sentence the defendant is currently serving under docket No. 1811-
> CR00267-01 Circuit Court, St Charles, Missouri. In this case, the
> defendant was in custody from January 23rd, 2018 to March 15th 2019,
> or approximately 14 months."

PSR at 108.

> However, this "14 months" calculation does not factor in that he is in

federal custody via a Writ of Habeas Corpus, in effect only on *loan* to the

federal system and not in primary federal custody.  He has yet to complete

his entire four-year sentence, and as noted in the PSR that sentence will not

end until January 22, 2022.   He will not receive credit by the United States

Bureau of Prisons for any time in primary state custody.  He has been in primary state custody since his arrest on January 22, 2018 and remains so and he will not receive credit for the past for three years he has been serving his state sentence. See Ex. A *Federal Sentence Computations*, Sadowski, Reginal Counsel, Northeast Region, Federal Bureau Of Prisons.

The statue governing sentence computation is 18 U.S.C. § 3585(b) which provides:

(b)     Credit for prior custody—A defendant shall be given credit towards the sentence of a term of imprisonment for any time spent in official detention prior to the date the sentence commences·…that has not been credited against another sentence. Prior custody credit under 3585(b) precludes credit when awarded towards another sentence. Once the BOP begins the federal sentence, there is no double credit prohibition under 3585.

## U.S.S.G. § 2G2.2 Results in Overstated Advisory Range

A sentence within the advisory Guideline range in this case would result in a punishment that is greater than required to achieve the goals of sentencing. excessive. Under § 2G2.2, nearly every defendant charts at or above any applicable statutory maximum and above any mandatory minimum for child pornography offenses regardless of Acceptance of

10

Responsibility and Criminal History. This is unlike any other set of Guidelines provisions and as a result, over the years, numerous courts have determined that the Guidelines in child pornography cases are owed less deference than Guidelines for other offenses.[3]

There are many specific offense characteristics which are expected to apply in almost every case involving child pornography.  These include use of a computer, material involving children under twelve years of age, number of images and sadistic and masochistic depictions.  The internet provides the typical means of obtaining child pornography, resulting in a two-level enhancement under § 2G2.2(b)(6). Defendants can easily obtain 600 images with minimal effort, resulting in a five-level increase under § 2G2.2(b)(7)(D) given that a few seconds of video-clip creates hundreds of images.

As the Court is aware, the easy accessibility of the internet has changed the nature of the consumption of child pornography.  Some researchers have called it the "Triple A engine", that facilitates the consumption of child pornography for people such as Jeffrey Eisenbath who otherwise likely would have had no access.  Millions of websites are accessible 24 hours a day, 7 days a week. Obtaining the material is free and anonymous and can be viewed in

---

[3] See, e.g. *U.S. v. Beiermann*, 599. Supp. 2d 1087, (N.D. Iowa 2009); *U.S. v. Diaz*, 720 F. Supp. 2d 1039 (E.D. Wis. 2010); *U.S. v. Riley*, 655 F. Supp. 2d 1298 (S.D. Fla. 2009)

private. [4] The child pornography guidelines were not based on empirical evidence regarding the manner in which these offenses are regularly carried out, technological realities, or the history and characteristics of these offender.  As a result, the guidelines are always unduly high and fail to distinguish between more and less serious offenders.

## Conclusion

The Guideline sentence is not the presumptively correct sentence as the United States Supreme Court made clear by eliminating the provision of the Sentencing Reform Act that made the Guidelines mandatory in *United States v. Booker*. 543 U.S. 220 (2005) restoring the discretion of sentencing judges to impose non-Guideline sentences. The mandatory minimum for production is 15 years imprisonment.  This sentence, to be ordered concurrent to his related St. Charles County and Lincoln County cases (PSR at 74 and 79) is supported by the facts and circumstances of Jeffrey Eisenbath's life and the offenses he committed and accomplishes the goals of sentencing. He faces a lifetime of supervision and will have access to the treatment and help that he sought in the past.

---

[4] Research article, BioMed Central Psychiatry *The Consumption of Internet Child Pornography and Violent and Sex Offending* Endras et al. (2009)

Respectfully submitted,


/s/Felicia A. Jones
FELICIA A. JONES, #36456MO
Assistant Federal Public Defender
1010 Market Street, Suite 200
St. Louis, Missouri 63101
Telephone: (314) 241-1255
Fax: (314) 421-3177
E-mail: Felicia_Jones@fd.org

ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2021, the foregoing was filed electronically with the Clerk of the Court to be served upon Kyle Bateman, Assistant United States Attorney.



/s/Felicia A. Jones
FELICIA A. JONES, #36456MO
Assistant Federal Public Defender